IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLETTE REID** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 13-4448 |
| v. | : | |
| | : | |
| **HAYTHAM ALBIZEM, M.D.,** | : | |
| **GUIDANT CORPORATION, and** | : | |
| **HEART CARE CONSULTANTS, LLC** | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                JUNE 25, 2014

## MEMORANDUM OPINION

**INTRODUCTION**

The primary issue before this Court is whether this matter should be remanded to the Philadelphia County Court of Common Pleas.

On July 31, 2013, Defendant Guidant Corporation ("Guidant")[1] filed a notice of removal of the matter *Reid v. Haytham Albizem, M.D., et al.,*[2] June Term 2013, No. 2317, from state court contending that this Court has original jurisdiction under 28 U.S.C. §§ 1332 and 1441 *et seq.*, because Defendants Haytham Albizem, M.D. ("Dr. Albizem") and Heart Care Consultants, LLC ("HCC") were fraudulently joined in the state action. [ECF 1]. Plaintiff Willette Reid ("Reid") disagrees. [ECF 16].

On September 26, 2013, a rule to show cause was issued directing all parties to address the claim of fraudulent joinder and whether this matter should be remanded. [ECF 13]. The

---

[1] Guidant LLC is misnamed as "Guidant Corporation," its former name. On February 19, 2010, Guidant Corporation converted into Guidant LLC under Indiana law. (Notice at 1 [ECF 1]).
[2] In the complaint, Plaintiff contends that Dr. Albizem, an employee of Heart Care Consultants, LLC surgically implanted a Boston Scientific implantable cardioverter defibrillator with wire leads manufactured by Guidant. She further contends that Dr. Albizem and Guidant expressly warranted the safety and efficacy of the defibrillator and wire leads, yet because of abnormal functioning, the wire leads had to be surgically removed. *See* Compl. ¶¶ 1, 2, 34, 35, 48.

parties submitted briefs. [ECF 14, 16]. After carefully considering the arguments made and the applicable case law, for the reasons stated herein, this Court will retain jurisdiction and dismiss Dr. Albizem and HCC, as defendants, on the basis of fraudulent joinder.

**BACKGROUND**

Reid is a citizen of Pennsylvania who, on November 18, 2010, underwent an outpatient surgical procedure to implant a cardioverter defibrillator ("ICD") and wire leads to treat her chronic systolic heart failure, cardiomyopathy, and severe left ventricular dysfunction. (Compl. ¶¶2, 6, 23). The surgery was performed by Dr. Albizem. (*Id.* at ¶¶37-39).

Guidant, the manufacturer of the controversial wire leads, is an Indiana limited liability company with a sole member, Guidant Delaware Holding Corporation, a Delaware corporation with its principal place of business in Minnesota. (Notice at ¶11). Under 28 U.S.C. §1332(c)(1), Guidant is deemed a citizen of Minnesota and Delaware. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (the citizenship of a limited liability company "is determined by the citizenship of each of its members.")). Dr. Albizem and his employer, HHC, are alleged to be citizens of Pennsylvania. (Compl. ¶¶10, 11).

In the complaint, Reid avers that Dr. Albizem and Guidant, at the time of the surgery, orally and expressly warranted the safety and efficacy of the ICD and the wire leads, (*Id.* at ¶¶67-69), and advised her that no other surgery would be needed to address her medical condition for at least seven years. (*Id.* at ¶34). However, on October 11, 2012, Reid was admitted into Hahnemann University Hospital to extract and replace the ICD due to a malfunction and noise from the defibrillator. (Compl. at ¶47). Serious complications occurred during the surgery and Reid's cardiologist decided not to extract and replace the ICD wire leads. (*Id.* at ¶57). Reid

remained hospitalized in the intensive care unit until her discharge on October 16, 2012. (*Id.* at ¶¶56-58, 60). Reid is monitored every two weeks by her cardiologist and has not had a replacement ICD implanted. (*Id.* at ¶¶61-63).

On June 18, 2013, Reid filed a one-count complaint in the Philadelphia County Court of Common Pleas against Defendants Dr. Albizem, HCC, and Guidant, for breach of express warranty. Although Guidant was not served with the complaint, on July 26, 2013, its counsel obtained an electronic copy from the court's website. (Notice at ¶2).

At approximately 4:00 p.m. Eastern Standard Time on July 31, 2013, Guidant filed a notice of removal claiming diversity jurisdiction pursuant to 28 U.S.C. §1446(b), and arguing that the citizenship status of Dr. Albizem and HCC should be ignored because they were fraudulently joined in the action. *See Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (quoting *In re Briscoe,* 448 F.3d 201, 216 (3d Cir. 2006) (citation omitted) ("[A] defendant may still remove the action if … non-diverse defendants were 'fraudulently' named or joined solely to defeat" federal jurisdiction.)).[3]

On September 20, 2013, counsel for HCC sent this Court a letter agreeing with Guidant's notice of removal and its claim of fraudulent joinder and, further, requested that this issue be resolved. As stated, on September 26, 2013, a rule to show cause was issued directing all parties to address the issue of fraudulent joinder and whether remand is appropriate. [ECF 13].

**LEGAL STANDARD**

District courts have original jurisdiction in all civil actions involving citizens of different States where "the matter in controversy exceeds the sum or value of $75,000, exclusive of

---

[3] The electronic filing stamp on the Philadelphia Court of Common Pleas docket indicates that Reid filed an amended complaint on July 31, 2013, at 4:36 p.m. Eastern Standard Time, (Dft. Brief at 2 [ECF 14]), after the matter was removed to federal court.

3

interest and costs." 28 U.S.C. § 1332(a). Individuals are deemed to be citizens of the State wherein they reside. A corporation is deemed a citizen of every state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A civil action removable on the basis of diversity of citizenship may not be removed to federal court if any of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought. 28 U.S.C. § 1441(b)(2). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. § 1447(c).

As stated, Reid and Defendants Albizem and HCC are citizens of Pennsylvania, Guidant is deemed a citizen of Minnesota and Delaware, and the action was brought in a Pennsylvania state court. The issue of this Court's jurisdiction was raised by Guidant's claim of fraudulent joinder in its notice of removal. In the diversity jurisdiction context, the doctrine of fraudulent joinder serves as an exception to the requirement that removal be predicated solely upon complete diversity. *In re Briscoe,* 448 F.3d at 215-16. This doctrine prevents a plaintiff from joining non-diverse defendants with no real connection to the controversy to defeat federal removal jurisdiction.

A district court may base a finding of fraudulent joinder on factual or legal grounds. *In re Zoloft Products Liability Litigation*, No. 12-3122, 2013 WL 6050627, at *1 (E.D. Pa. Nov. 14, 2013). Such a finding is appropriate "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id*. (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). A claim is colorable if it is not "wholly insubstantial and frivolous" in light of the relevant law. *Batoff v. State Farm Ins. Co.*, 977 F.2d

4

848, 852 (3d Cir. 1992). A claim's factual basis may involve a "limited piercing of the allegations to discover fraudulent joinder." *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). However, the type of examination of plaintiff's claim is less probing than the review of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Batoff*, 977 F.2d at 852.

A plaintiff's subjective motive for suing a non-diverse defendant, even if that motive is a desire to defeat removal, is not relevant to the inquiry of fraudulent joinder. *See Abels*, 770 F.2d at 32 (citations omitted). Instead, the Third Circuit requires an objective test; *i.e.*, whether a plaintiff has failed to state a claim upon which relief can be granted or simply failed to prosecute the claim against the non-diverse defendant. *Boyer*, 913 F.2d at 111. The heavy burden of demonstrating a fraudulent joinder rests with the defendant making the claim. *See id.* When evaluating fraudulent joinder, the district court "must resolve all contested issues of substantive fact…and…any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Id.* "[I]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (citation omitted). A court should not find a joinder fraudulent "[s]imply because [it] come[s] to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action." *Kallman v. Aronchick*, No. 13-4637, 2013 WL 5964444, at *5 (E.D. Pa. Nov. 8, 2013) (quoting *Lyall v. Airtran Airlines, Inc.*, 109 F. Supp. 2d 365, 367-68 (E.D. Pa. 2000)). Rather, a finding of fraudulent joinder is usually reserved for situations where recovery from the non-diverse defendant is a clear legal impossibility. *West v. Marriott Hotel Servs., Inc.*, No. 10-4130, 2010 WL 4343540, *3 (E.D. Pa. Nov. 2, 2010) (quotations omitted). "Fraudulent joinder should

not be found simply because plaintiff has a weak case against a non-diverse defendant." *Id.*; *see Boyer,* 913 F.2d at 111.

Therefore, if it is determined that the joinder of Dr. Albizem and HCC was fraudulent, the citizenship of these non-diverse Defendants can be disregarded, this Court can assume and retain jurisdiction over this matter, and dismiss said Defendants. *See In re Briscoe,* 448 F.3d at 216. On the other hand, if it is determined that this Court does not have jurisdiction over the action because the joinder of Dr. Albizem and HCC was not fraudulent, the case must be remanded to state court. *In re Briscoe,* 448 F.3d at 216 (citing 28 U.S.C. § 1447(c)).

As a final point, to determine whether a fraudulent joinder exists, a district court must examine the state law's requirements in assessing the quality of these claims and the substantive law of the state in which it sits, including that state's choice of law rules, if applicable. *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (citations omitted). Here, there is no apparent dispute as to the applicable state law. Reid is a Pennsylvania citizen and her injury occurred in this state, allegedly caused by Defendants, two of which are also citizens of Pennsylvania. This Court, therefore, finds that Pennsylvania law applies to Reid's alleged claims that Dr. Albizem and HCC breached an expressed warranty regarding the safety and efficacy of the ICD and wire leads.

**DISCUSSION**

The primary issue before this Court is whether Reid has pled a reasonable basis in fact or colorable ground supporting a claim of breach of express warranty of the product against Dr. Albizem and HCC, or if such a claim is "wholly insubstantial and frivolous." That is, whether Reid has asserted a *bona fide* claim against Dr. Albizen and HCC, or whether facts exist which raise a real possibility of liability against them. This Court will focus on Reid's "complaint at the

time the petition to remove was filed," *In re Briscoe,* 448 F.3d at 217 (quoting *Batoff,* 977 F.2d at 851-52 (punctuation and citations omitted)), accepting the factual allegations of the complaint as true and "'resolv[ing] any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.'" *Batoff,* 977 F.2d at 851-52 (quoting *Boyer*, 913 F.2d at 111).

Guidant maintains that the breach of express warranty claim against Dr. Albizem and HCC is legally insignificant and frivolous because: (1) neither Dr. Albizem nor HCC are sellers of the device at issue as defined in the Pennsylvania Uniform Commercial Code, 13 Pa. C.S.A. §2313 ("Pa. UCC"); (2) Reid has failed to allege that Dr. Albizem warranted a specific health result or cure; and (3) Reid has failed to establish a *prima facie* claim against Dr. Albizem for express breach of warranty since no special contract warranting the results exists in writing.

Reid refutes these arguments and contends that regardless of whether Dr. Albizem, as a physician, is considered a seller of a product, the law permits a breach of warranty claim against him and, further, any warranty expressed by Dr. Albizem does not have to be in writing, and offers *Mason v. Western Pennsylvania Hospital*, 453 A.2d 974, 975 (Pa. 1982), and *Murray v. University of Pennsylvania Hospital*, 490 A.2d 839, 405 (Pa. 1985), for the general proposition that a doctor and patient may, if they choose to do so, contract that a course of treatment will produce a specific result; if that result is not achieved, the patient may then have an action for breach of contract even though the doctor exercised the highest degree of care.

In Pennsylvania, an action for personal injury based on breach of an express warranty, although it may sound in tort is, in substance, one for breach of contract, *Pritchard v. Liggett & Myers Tobacco Co.*, 350 F.2d 479, 484 (3d Cir. 1965), *amended*, 370 F.2d 95 (3d Cir. 1966), and is a common law remedy for a contractual commitment voluntarily undertaken. *Rosci v. AcroMed, Inc.,* 669 A.2d 959, 968 (Pa. Super. 1995); *see also Dougherty v. C.R. Bard, Inc.*, No.

11-6048, 2012 WL 2940727, at *8 (E.D. Pa. July 18, 2012) ("A claim for breach of express warranty [ ] sounds more in contract than in tort."). Further, the Pa. UCC governs express warranties by a seller of goods as being created by, in relevant part, any affirmation of fact or promise made by the seller to the buyer which relates to a specific good and becomes part of the basis of the bargain. 13 Pa. C.S.A. §2313(a)(1); *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 501 (W.D. Pa. 2012). A "seller", as defined under the Pa. UCC, is a "person who sells or contracts to sell goods." §2103(a).

In addition, Pennsylvania law provides that "[i]n the absence of a *special contract in writing*, a health care provider is neither a warrantor nor guarantor of a cure." 40 P.S. §1303.105 (the Medical Care Availability and Reduction of Error Act) ("MCARE"), previously codified at 40 P.S. §1301.606 (the Health Care Services Malpractice Act ("HCSMA") (emphasis added). *See also Vogelsberger v. Magee-Womens Hosp. of UPMC Health System*, 903 A.2d 540, 560 (Pa. Super. 2006); *Grabowski v. Quigley*, 684 A.2d 610, 616 (Pa. Super. 1996).

In weighing Guidant's claim of fraudulent joinder, this Court considered the allegations in Reid's complaint, to *wit*:

> Prior to implanting Guidant's ICD, Dr. Albizem personally assured Plaintiff that Guidant warrantied and guaranteed that the defibrillator and the leads would be good for at least seven years and that no additional surgeries would be needed for at least that long. Dr. Albizem also told Ms. Reid that the ICD and leads he had chosen were the safest available and most effective to treat her condition. Based on the Defendants' express warranties and representations, Plaintiff agreed to undergo ICD implantation. (Compl. ¶¶34-36).

This Court accepts these factual allegations as true. In her complaint, however, Reid makes no reference to any writing to support the express warranty claim.[4] Reid tacitly admits that no writing exists by arguing that a writing is not necessary and proffers *Mason* at 453 A.2d

---

[4] Notably, Williams also fails to allege the existence of a written guarantee by Dr. Albizem and/or HCC in the second amended complaint filed in this Court after Guidant removed the matter.

8

975 and *Murray* at 490 A.2d 405. Reid's reliance is misplaced, however, as these cases predate the HCSMA, which was supplanted in 2002 by the MCARE Act;[5] an act which unequivocally requires a written contract. Reid also relies on *Vogelsberger v. Magee-Womens Hosp. of UPMC Health System, supra*. However, this case is distinguishable from the matter at hand. In *Vogelsberger*, the Superior Court found the MCARE Act provision, §1303.105, requiring that a special contract be in writing, inapplicable because the breach of contract claim was not predicated on the guarantee of a cure but, rather, on an averment that the physician agreed to perform prophylactic removal of the patient's ovaries, but failed to do so. *Id*., 903 A.3d at 560-61. Notwithstanding, Reid contends that her condition is more akin to the plaintiff's in *Vogelsberger* in that she sought surgery to *prevent a condition* (complete heart failure) and not a *cure*, defined as "recovery or relief from a disease", basing her argument on the fact that Dr. Albizem diagnosed her condition as "noncritical coronary artery disease," (Compl. ¶22), and opined that the pacemaker would "cure" her problems.

This Court, however, finds guidance in *Flora v. Moses,* 727 A.2d 596 (Pa. Super. 1999), wherein the Pennsylvania Superior Court stated "in a hypertechnical sense there may be a difference between a 'result of treatment' and a 'cure' [this Court is] unwilling to embrace such an interpretation as to do so would clearly frustrate the purpose of the [HCSMA] provision in question." *Flora*, 727 A.2d at 599. There, the court emphasized that the terms "cure" and "result" were synonymous and recognized that a special written contract in the context of a warranty or guarantee is necessary because the medical profession can seldom guarantee a specific result from a medical procedure or course of treatment.

---

[5] The HCSMA required that a physician's statements will not be construed as a warranty or guarantee that treatment will produce a specific result or cure unless expressly set forth in writing. On March 20, 2002, the HCSMA was repealed and supplanted by the MCARE Act of March 20, 2002, P.L. 154, no. 13.

Further, this Court finds persuasive the determination in *Edwards v. Germantown Hosp.*, 736 A.2d 612 (Pa. Super. 1999), holding that a patient who does not aver the existence of a written contract in the complaint, fails to set forth a basis upon which relief could be granted. *Edwards* distinguished *Murray* and *Mason*, and cited, with approval, *Flora* and *Grabowski*. These cases discussed §1301.606 of the HCSMA and recognized that a special written contract in the context of a warranty or guarantee is necessary. *Edwards*, 736 A.2d at 616; *Grabowski*, 684 A.2d at 617. In this Court's opinion, the guarantee of a result of treatment, as Reid asserts Dr. Albizem did here (in guaranteeing that no additional surgery would be needed for at least seven years) equates with a guarantee of a cure and, therefore, any such agreement is required to be in writing. *Flora*, 727 A.2d at 599. Based upon the analysis made, Reid is unable to support the existence of a *special contract in writing* between her and Dr. Albizem and HCC warranting the product, as required by the MCARE Act.

Moreover, this Court notes that Reid does not allege that Dr. Albizem or HCC are "sellers" of the warrantied medical devices. While case law discussing sole claims for breach of express warranty allegations against a physician is scant, the Pa. UCC's definition of "seller" is supported in the strict products liability context. In those circumstances, Pennsylvania law is clear that neither a physician who implanted a medical device, nor the hospital at which the implant procedure occurred, is a "seller" where the primary activity involved is the provision of medical services, not the merchandising of medical devices. *See Cafazzo v. Central Medical Health Services, Inc.*, 668 A.2d 521 (Pa. 1995) (neither physician nor hospital was "seller" subject to strict liability). As such, for purposes of the Pa. UCC, Dr. Albizem and HCC are not "sellers" and Reid's breach of express warranty claim fails as a matter of law.

Consequently, this Court finds that: (a) Reid has failed to establish a *prima facie* claim against Dr. Albizem and HCC for breach of express warranty, (b) Dr. Albizem and HCC are fraudulently joined, (c) and subject matter jurisdiction is retained.

**CONCLUSION**

For the reasons stated, this Court finds that Reid has not pled a reasonable basis in fact or colorable ground supporting a claim of breach of express warranty against Dr. Albizem and HCC and such a claim is "wholly insubstantial and frivolous." Under the circumstances, this Court retains jurisdiction of this matter and dismisses Dr. Albizem and HCC as defendants on the basis of fraudulent joinder. An appropriate Order consistent with this memorandum opinion follows.

*Nitza I. Quiñones Alejandro, U.S.D.C. J.*